# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IVAN SMITH,                        **CASE NO. 2:06-cv-965**
                                          **CRIM. NO. 2:03-cr-048**
          **Petitioner,**          **JUDGE FROST**
                                            **MAGISTRATE JUDGE ABEL**

v.

**UNITED STATES OF AMERICA,**

     **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED.**

## FACTS and PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Ivan J. Smith was arrested by undercover police officers in June of 2001 when he attempted to regain possession of his lost gym bag that contained powder cocaine. A month later, Smith was arrested again after he was shot in the arm by an unknown assailant, and the police investigating the crime discovered crack cocaine in his car and powder cocaine in a nearby garbage dumpster. Smith was thereafter indicted and convicted of attempted possession of more than 500 grams of powder cocaine with the intent to distribute, and of actual possession of more than 500 grams of powder cocaine and more than 5 grams of crack cocaine with the intent to distribute. The district court sentenced Smith to 200 months in

prison.

***

I. BACKGROUND

A. The gym-bag incident

An off-duty Columbus police officer was walking home in June of 2001, after dropping his car off for repairs, when he came across a gym bag partially hidden in the grass by the side of the road. Suspecting that the bag had either been lost or stolen, the officer took the bag home to determine if it contained anything that could be used to identify the bag's rightful owner. In inventorying the bag before taking it to the police property room, the officer discovered that, in addition to gym clothes and personal papers, the bag contained two bricks of a white substance that he suspected was crack cocaine. (It later turned out to be 1,636 grams of powder cocaine.)

The bag was turned over to the police department's narcotics unit following the discovery of the drugs. There were several papers in the bag that listed Smith's name, address, and telephone number. The officers decided that Smith was the probable owner of the bag and attempted to contact him. One of the officers called Smith on an undercover cellular telephone and pretended to be someone who had found the bag and who was now seeking a reward for returning it to the owner. Several telephone calls ensued between the undercover officer and a man identifying himself as Smith. These phone calls were recorded by the police. (Smith later admitted that it was his voice on some of these calls, but denied that it was his voice on other calls.) At no point did the officer tell Smith that there was cocaine in the bag, but he did repeatedly state that he had Smith's "bag with things in there that I didn't want in my house."

Smith and the undercover police officer agreed to meet shortly

after midnight in a Wal-Mart parking lot to exchange the gym bag and the reward money. As had been arranged, the officer placed the bag in a shopping cart next to a light pole in the parking lot and returned to his car. A van then pulled up and a female passenger got out and picked up the bag. Before the woman could return to the van with the bag, the police arrested her and the man driving the van. These two turned out to be Smith's niece and nephew. The van they were driving was registered to Creola Puryear, the mother of two of Smith's children.

During the gym-bag exchange and subsequent takedown, the police observed another car in the parking lot, the driver of which was acting suspiciously. The driver was hunched over in his seat monitoring the scene and was speaking on a cellular telephone. He was arrested, and the police subsequently identified him as Smith. The car he was driving was also registered to Creola Puryear. Phone records later revealed that Smith had been speaking on his cellular telephone to his nephew, the driver of the van involved in the gym-bag exchange.

As a result of the gym-bag incident, Smith was indicted for attempted possession of more than 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). He testified at trial that the bag was stolen from him at a basketball game two weeks before and that he was anxious to recover it because it contained heirloom jewelry. According to Smith, there was no cocaine in the bag when it was stolen. But, following a seven-day trial on this charge and charges related to the following incident, the jury obviously disbelieved Smith and found him guilty on this charge.

B. The carjacking incident

In July of 2001, Smith was traveling in his car with a second nephew when he was allegedly the victim of an attempted carjacking. (Much of this account is drawn from Smith's own testimony, which was not corroborated by other witnesses.) Smith said that he was driving through an unfamiliar part of town when he was forced to stop because several cars were

parked in the middle of the street ahead of him. When Smith stopped his car, "some guys" came running up and one of them had a gun. The man stuck the gun through the passenger-side window and held it up to the head of Smith's nephew, telling him to get out of the car.

After Smith's nephew had fled, the gunman walked around and opened Smith's door, ordering him out of the vehicle. At this point Smith noticed that the gunman was carrying something in his other hand. One of the men accompanying the gunman opened the car door and climbed into the back seat of Smith's vehicle. This man punched Smith in the back of the head and demanded that he take off his jewelry before getting out of the car. Smith removed his jewelry and attempted to get out of the car, but forgot that he was wearing his seatbelt. When he reached down to unbuckle it, the man with the gun shot Smith in the right arm.

Smith reacted to being shot by stomping down on his car's gas pedal. He then made a sharp turn, which caused the two carjackers to fly out of the car. The gunman fired at least one more shot at Smith's car as he drove away. After this, Smith's memory gets hazy. He remembers nothing more of what happened until he was in an ambulance on his way to the hospital.

Following the shooting, Smith's car traveled several blocks and made two turns before crashing into a fence behind the home of Donald Davis. Davis went up to the car and saw Smith "sitting at the steering wheel with his arm in real bad shape and blood everywhere." When Davis told Smith that he was calling 911, Smith responded by saying that he "had to get out of there." Davis left to go call for help. When he returned to Smith's car, Smith was gone. Looking around, Davis saw Smith walking down a nearby alley. Davis testified at trial that he had not seen Smith carrying anything, but two police officers on the scene that night had in their notes that Davis told them that he had seen Smith carrying something as Smith walked down the alley.

When the paramedics arrived, they found Smith, badly hurt

but conscious, lying several hundred feet down the alley. He told the paramedics that he had been carjacked. Smith was taken to the hospital in serious condition with a gunshot wound to his right arm. At the hospital, marijuana was found in his clothing.

The police arrived on the scene shortly after the paramedics and immediately secured the area around the car, including the alley where Smith was found. They followed Smith's steps from the car down the alley. This led them past a garbage dumpster in the alley between the crashed car and where Smith had been lying. When they opened the dumpster, the officers found a shoe box with blood on its lid sitting atop the garbage. Inside the shoe box there was white powder and $12,390 in cash.

After obtaining a search warrant, the police searched Smith's car and found more white powder on the floor in the front passenger area. They also found a bag containing a white substance and a bottle of pills with Smith's name on them in the built-in pocket behind the driver's seat. The shoe box and the white powder inside it, the white powder from the floor of the car, and the bag from behind Smith's seat were all sent to a laboratory for analysis. Testing revealed that the 505.1 grams of white powder in the shoe box consisted of a detectable amount of less than one percent cocaine. The remaining powder in the shoe box and the white powder from the floor of the car were only a cutting agent and contained no measurable cocaine. But the white substance found in the pocket behind Smith's seat contained 46.9 grams of crack cocaine. The blood found on the lid of the shoe box matched the blood sample taken from Smith.

As a result of the discovery of the drugs in Smith's car and in the dumpster, Smith was indicted for possession of more than 500 grams of powder cocaine and more than 5 grams of crack cocaine with the intent to distribute, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)-(iii). At trial, Smith denied that he possessed any drugs. He offered the alternative theory that the drugs were left in his car by the men who attempted to carjack him. Smith emphasized that these men have not been

apprehended. The jury, however, again disbelieved Smith and found him guilty on both counts relating to the car-jacking incident.

Smith's sentence was enhanced for obstruction of justice after the district court found that he had testified falsely at trial. Without this enhancement, Smith's sentencing range would have been 151 to 188 months of imprisonment, but after the enhancement, his range was 188 to 235 months. The district court sentenced Smith to 200 months in prison.

*United States v. Smith*, 138 Fed.Appx. 775, 2005 WL 1653440 (6th Cir. July 12, 2005).

On appeal, petitioner asserted:

that the district court (1) erred in failing to sever and try separately the counts in the indictment relating to the two incidents, (2) erred in concluding that there was sufficient evidence to support the jury's guilty verdict, (3) erred in admitting the prejudicial testimony of two witnesses pursuant to Rule 404(b) of the Federal Rules of Evidence, and (4) violated Smith's Sixth Amendment rights by enhancing his sentence based upon judge-found facts.

*See id.* On July 12, 2005, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's convictions, but vacated his sentence and remanded the case to the District Court for re-sentencing under *United States v. Booker,* 543 U.S. 220 (2005). The Sixth Circuit further summarized the procedural history of this case in petitioner's subsequent appeal as follows:

Smith's initial sentencing was held in March 2004. Smith made objections to the recommendations in the presentence report, specifically (1) the inclusion of 505.1 grams of a cocaine mixture discovered in a shoe box as relevant conduct, (2) a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, and (3) the addition of a criminal history point for a previous possession-of-marijuana conviction. Smith

also requested a downward departure in his criminal history category. The objections and request were denied by the district court, which determined the sentencing guidelines range to be between 188 and 235 months in prison (offense level 34, criminal history category III). The range reflected the two-level enhancement for obstruction of justice, which resulted from the district court's determination that Smith had committed perjury when he testified at trial. Smith's sentence included 200 months in prison on each count, to be served concurrently; eight years of supervised release; and a fine and special assessment.

Smith filed an appeal, claiming error in both his conviction and his sentence. FN1 While the appeal was pending, *Booker* was decided by the United States Supreme Court, making the sentencing guidelines advisory, rather than mandatory. We affirmed the conviction but, citing *Booker*, determined that "[t]he district court committed plain error, therefore, in sentencing Smith under the then-mandatory Sentencing Guidelines based upon a judge-found fact." Smith's sentence was vacated and the case was remanded for resentencing.

FN1. During the time the first appeal was pending, Smith filed a motion for new trial based on newly discovered evidence, which was denied by the district court. Some of those issues are the subject of Smith's subsequent 28 U.S.C. § 2255 petition to set aside his conviction. The district court has stayed disposition of that petition pending resolution of the instant appeal.

At the first resentencing held November 3, 2005, the district court determined that, post-*Booker*, it did not have the authority to make a factual finding on Smith's obstruction of justice at his trial. Accordingly, the district court determined that the guidelines sentencing range was 151 to 188 months, and sentenced Smith to 180 months in prison, leaving the remaining sentence terms unchanged. The government disagreed with this position in both its sentencing memorandum and on the record, arguing that under the post-*Booker* advisory sentencing guidelines, the district court was permitted to make an obstruction-of-justice factual finding and

the resulting sentence enhancement. The government appealed the new sentence.

We agreed with the government on the second appeal, concluding the district court did have the authority to make a factual finding on the obstruction-of-justice issue under the advisory guidelines, citing *United States v. Gates*, 461 F.3d 703, 708 (6th Cir.2006); *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir.2006); and *United States v. Coffee*, 434 F.3d 887, 898 (6th Cir.2006). Accordingly, we remanded the case a second time for resentencing.

The second resentencing in this case was held September 19, 2007. Given our ruling, the district court imposed the two-level enhancement for obstruction of justice. This reinstated an advisory guideline range of 188 to 235 months, based on an offense level of 34 and a criminal history category of III. However, the district court did not impose a sentence in that range. For the reasons described below, the district court chose to resentence Smith to the same 180-month period that it had imposed at the previous hearing.

In Smith's sentencing memorandum filed prior to the September 2007 resentencing, he renewed the objections that he had voiced in previous proceedings, and raised a new issue before the district court. He specifically asked the court to consider then-recent recommendations of the United States Sentencing Commission concerning amendments to the guidelines reducing the disparity between crack and powder cocaine, which had not yet been implemented.FN2 Application of the anticipated guidelines would have given Smith an offense level of 32 versus a level of 34 under the then-current guidelines, and resulted in a lowered guidelines range of 151 to 188 months' imprisonment.

FN2. In an effort to reduce the sentencing disparity between powder and crack cocaine offenses, the November 2007 amendments reduced, by two levels, the base offense level assigned to each quantity of crack cocaine identified in the guidelines. *See Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 569, 169 L.Ed.2d 481 (2007). The amendments were made

retroactive effective March 3, 2008. See 73 Fed.Reg. 217-01 (Jan. 2, 2008).

> At the sentencing hearing, the district court discussed the 18 U.S.C. § 3553(a) sentencing factors on the record, articulating at the end the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." Noting that it would not "wait on" the Sentencing Commission's ultimate conclusion regarding the proposed amendments prior to sentencing the defendant, the district court acknowledged the disparity in sentencing "throughout the nation among federal judges with regard to this disparity of crack and powder cocaine." The district court discussed many of the practical reasons why the Sentencing Commission was considering the change, and determined it would not be fair to give the defendant a guidelines sentence "on the 100 and 1 disparity type of thing that's going on right now, as opposed to what it might change to later on." The district court then sentenced Smith to the previously imposed 180 months on each count, to be served concurrently, which is within the post-amendment guidelines range. The government did not object to the district court's pronouncement.

*United States v. Smith*, 319 Fed.Appx. 378, 2009 WL 877712 (6th Cir. April 1, 2009). On appeal, petitioner requested that his sentence be vacated and that he be re-sentenced under 18 U.S.C. §3582(c). However, because the District Court had already considered subsequent amendments to the United States Sentencing Guidelines when imposing sentence, the Sixth Circuit affirmed petitioner's sentence as follows:

> Smith requests that we vacate his sentence and remand to the district court for application of the amended guidelines, such action would serve no real purpose. Smith cites to 18 U.S.C. § 3582(c)(2), which provides that-as in this case-when the sentencing range used to sentence a defendant has subsequently been lowered, the term of imprisonment may be reduced upon appropriate motion to the sentencing court.

9

Smith does not assert that such a motion was made to the district court, simply stating that he is "a good and proper candidate for an additional reduction in sentence." Smith directs us to *United States v. Poole*, 538 F.3d 644 (6th Cir.2008), where we found the proper procedure for application of retroactive amendments to the Sentencing Guidelines was to "affirm the sentence but to remand for consideration of whether the prisoner is entitled to a sentence reduction under § 3582(c)." *Id.* at 646 (citing *United States v. Ursery*, 109 F.3d 1129, 1137-38 (6th Cir.1997)).... In *Poole*, however, there is no indication that the district court considered the upcoming amendments in fashioning a sentence.

The government requests that we simply affirm the district court without remand, for the reason that the defendant has already received the benefit that the retroactive amendment contemplates. We agree with this position. Whether or not it was proper for the district court to consider the upcoming amendments in the way that it did, the amendments took effect. We also note that the district court was sentencing this defendant for the third time, and that it thoroughly applied the 18 U.S.C. § 3553(a) sentencing factors. The district court's previous sentence of 180 months' imprisonment was consistent with the range that would have resulted from application of the later-enacted amendments, and it is clear that the district court was taking the upcoming amendments into consideration to lend finality to its third pronouncement of sentence for this defendant. Because the record indicates that the district court would not alter its sentence if it were to revisit this issue, we decline to remand for resentencing.

*See id.* (footnote omitted). On April 30, 2009, the mandate issued. Doc. No. 167. On August 10, 2009, petitioner submitted a waiver of his attorney-client privilege as it relates to the claims raised in this habeas corpus petition. Doc. No. 170. On August 18, 2009, the government filed a supplemental response. Doc. No. 171. On November 23, 2009, petitioner filed a reply and affidavit in support of his reply. Doc. Nos. 176, 177.

Petitioner's appeal now being concluded and supplemental responses filed, his previously filed motion under 28 U.S.C. §2255, stayed at the request of the parties pending resolution of his appeal, now is ripe for disposition. Petitioner asserts as follows:

1. Ineffective assistance of counsel due to counsel's failure to challenge the violation of petitioner's speedy trial rights.

2. Ineffective assistance of counsel, due to counsel's failure to move for severance at the district level.

3. Ineffective assistance of counsel, due to counsel's failure to properly argue the motion to suppress.

4. Ineffective assistance of counsel, due to counsel's failure to properly argue the 404(b) evidence at trial and on appeal.

5. Petitioner was denied his 5th Amendment right to a fair trial due to counsel's ineffectiveness.

Counsel failed to investigate, interview, present evidence, and call witnesses; and failed to challenge the government's misconduct.

6. Petitioner was denied his due process right to a fair rule 33 hearing, due to the government's misconduct, counsel's ineffectiveness, and counsel's failure to file a requested notice of appeal.

7. Newly discovered evidence of petitioner's actual innocence.

8. Ineffective assistance of counsel, due to counsel's failure to argue at sentencing and on appeal that the 180 month sentence imposed violated petitioner's 5th and 6th Amendment rights.

9. Ineffective assistance of counsel, due to counsel's failure to file a requested notice of appeal.

10. Ineffective assistance of counsel, due to counsel's failure to fully discuss the risks of proceeding to trial versus accepting

the proposed plea agreement, and for refusing to allow petitioner to enter a plea of guilty.

It is the position of the respondent that all of petitioner's claims are without merit.

## MERITS

In claim one, petitioner asserts that he was denied the effective assistance of trial and appellate counsel because his attorneys failed to raise on appeal an issue regarding violation of the Speedy Trial Act. This claim is plainly without merit.

The Sixth Amendment guarantees the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that,

but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Petitioner has failed to meet this standard here.

18 U.S.C. §3161(c)(1) provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information of indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. §3162 provides the penalties for a violation of § 3161(c)(1), as follows:

> If a defendant is not brought to trial within the time limit

required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof supporting such motion, but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

The grand jury indicted petitioner on March 21, 2003. Doc. No. 1. On March 25, 2003, the day of his initial appearance, he was released on his own recognizance. Doc. No. 2. On April 9, 2003, the Court continued the trial date from May 19, 2003, to July 21, 2003, pursuant to the joint request of the parties. *See* Doc. No. 7, 8. Defense counsel requested the continuance as follows:

> The parties respectfully request a continuance of approximately 60 days, to allow defense counsel sufficient time to prepare for the trial of this case....

> Counsel for Mr. Smith needs additional time to review the discovery in this case and conduct his pretrial investigation to be properly prepared for the trial.

> ***

> A sixty day continuance of the trial date in this case is warranted due to the need of defense counsel to have sufficient

14

time to properly prepare for trial.

*Joint Motion for Continuance*, Doc. No. 7.  The Court granted the request in relevant part

as follows:

> 1.  The Court is available to try this case on May 19, 2003....
>
> 3.  Counsel for defendant has set forth a need for additional time to review discovery and conduct pretrial investigation to be properly prepared for trial.
>
> ***
>
> 5.  The failure to grant the requested continuance would likely result in a miscarriage of justice in this cause.  18 U.S.C. §3161(h)(8)(B)(I).
>
> 6.  Given the complexity of this case, which involves an investigation that began in 1999 and a charged conspiracy extending over two years, it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by 18 U.S.C. §3161.
>
> ***
>
> 8.  The foregoing considerations are appropriate reasons for granting the requested continuance.  These reasons meaningfully relate to defendant's opportunity for an adequate defense.
>
> 9.  A continuance until July 21, 2003 would not impair the interest of the public in speedy trials.

10.    The delay occasioned by the continuance is properly excluded from the time limits of the Speedy Trial Act.

Order, April 16, 2003, Doc. No. 8.    On June 17, 2003, petitioner again requested a continuance of the trial date to prepare for trial:

> [T]he Assistant United States Attorney has indicated there may be up to seventy-five (75) witnesses, and this may not include some of the forty-nine (49) persons charged in the investigation along with Defendant, Ivan Smith.  Counsel is still attempting to determine who some of these persons are, and attempt to deduce what they may say at a trial of Mr. Smith.  Counsel for these parties will need to resolve some of these issues in order that the focus of trial testimony be on factors relevant to the indictment....

> [C]ounsel for the Defendant has had the case two and one half months to prepare at this date.  For a criminal case of this magnitude, that is a short period of time....

> The Defendant will waive his right to a speedy trial for the time that the case is continued.

*Motion for Continuance*, Doc. No. 13.  On June 20, 2003, petitioner filed a written waiver of his right to a speedy trial, explicitly waiving his right to a speedy trial from June 20, 2003, until the next scheduled trial date of September 8, 2003. *Waiver of Speedy Trial,* Doc. No. 16. On June 24, 2003, the Court granted the request for a continuance of trial until September 8, 2003.  Order, Doc. No. 21.

The record therefore reflects that the delay in bringing petitioner to trial was attributable to the him and is excluded from the Speedy Trial Act. *See* 18 U.S.C. §3161(h)(1)

16

(D); *White v. United States,* 2008 WL 4745884 (N.D. Ohio October 24, 2008) (the delay in trial caused by the defendant's request for continuance is excluded from the speedy trial clock) (citations omitted).  Further, petitioner submitted a written waiver of his right to a speedy trial.  Doc. No. 16.  Contrary to petitioner's allegation here, the record indicates that the Court properly set forth in the record his reasons for finding that the ends of justice served by granting the continuance outweighed the best interests of the public and the defendant in a speedy trial.  *See Zedner v. United States*, 547 U.S. 489, 506 (2006)(The Speedy Trial Act "requires that when a district court grants an ends-of-justice continuance, it must 'se[t] forth, in the record of the case... its reasons' for finding that the ends of justice are served and they outweigh other interests:), citing 18 U.S.C. §3161(h)(8); *see also* Doc. Nos.  13, 21.  Therefore, petitioner has failed to establish the ineffective assistance of counsel based on his attorneys failure to raise such issue.

In claim two, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to move for severance of count two – involving the gym bag – from the charges in counts three and four.  Petitioner contends that he was prejudiced thereby because the United States Court of Appeals for the Sixth Circuit stated, in connection with its dismissal of petitioner's claim that the District Court improperly permitted testimony of two witnesses who said they had engaged in drug dealings with petitioner in the past, that "evidence of quantity alone may have been insufficient to support the jury's verdict."  *See Petition*, at 13; *United States v. Smith, supra*, 138 Fed.Appx.

at 785.[1]  Petitioner further argues that the "violent nature" of the evidence presented in connection with Counts Three and Four prejudiced him in regard to the finding of guilt on Count Two, on which there was, according to petitioner, a lack of evidence indicating he knew his stolen gym bag contained cocaine.  Petitioner also now states that he did not want to testify about charges in Counts Three and Four, because he had no memory of the events involving those charges, but solely wanted to testify about the charges involving his stolen gym bag in Count Two.

The Sixth Circuit rejected petitioner's claim that he was denied a fair trial by joinder of the charges against him as follows:

---

[1]  In context, the United States Court of Appeals for the Sixth Circuit stated as follows:

> Smith maintains... that the government should have relied solely on the evidence that he possessed large quantities of drugs in order to prove his intent to distribute the cocaine. But the evidence of quantity alone may have been insufficient to support the jury's guilty verdict. This was not a case where police officers arrested Smith in the midst of a drug sale, or where a confidential informant provided inside information regarding Smith's intent to sell the cocaine. Because the Rule 404(b) evidence was one of the few ways for the government to connect the cocaine found in Smith's possession with his intent to distribute it, the district court's admission of this evidence was not unduly prejudicial. *See United States v. Merriweather,* 78 F.3d 1070, 1077 (6th Cir.1996) ("One factor in balancing unfair prejudice against probative value ... is the availability of other means of proof."). Because the testimony of the two witnesses was more probative than it was prejudicial, we conclude that the district court did not err in admitting this evidence pursuant to Rule 404(b).

*United States v. Smith, supra,* 138 Fed.Appx. At 785.

On appeal, Smith contends that he should have received two different trials regarding the charges stemming from the gym-bag incident and the carjacking incident, and that the joinder of the two offenses deprived him of a fair trial. Rule 14(a) of the Federal Rules of Criminal Procedure permits the court to sever joined offenses where "consolidation for trial appears to prejudice a defendant." But Rule 12(b)(3)(D) of the Criminal Rules requires that a defendant make a Rule 14(a) motion for severance before the trial begins or else the objection is waived. *United States v. Rox*, 692 F.2d 453, 454 (6th Cir.1982) ("A defendant must move for severance based on misjoinder before trial or waive the objection.") (applying Rule 12(b)(5) of the Federal Rules of Criminal Procedure, an earlier version of Rule 12(b)(3)(D)).

The record reveals that Smith's counsel failed to make a Rule 14(a) motion prior to trial. Smith argues on appeal, however, that his counsel should have requested two different trials regarding the allegations of drug possession. Although this failure may be grounds for a post-conviction claim alleging the ineffective assistance of counsel, it cannot revive Smith's Rule 14(a) misjoinder objection on direct appeal. *See United States v. Stacy*, No. 93-6204, 1995 WL 150330, at *2 (6th Cir. Apr. 5, 1995) (unpublished) (directing the defendant, who alleged that his attorney was ineffective for failing to move for severance, to raise the claim in a post-conviction proceeding).

Moreover, even if Smith had raised his objection in a timely manner, his claim would have been without merit. Rule 14(a) requires that the counts in an indictment be severed only when the defendant demonstrates that he will be prejudiced by the joinder of the charges. *See Rox*, 692 F.2d at 454 ("A defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense."). The defendant bears the burden of demonstrating prejudice, a burden that Smith has not satisfied. *See United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004) (holding that "non-specific assertions of prejudice are insufficient to warrant severance under Rule 14") (vacated on other grounds). We therefore conclude that the district court

did not err in failing to sever the counts resulting from the gym-bag incident and the carjacking incident.

*United States v. Smith, supra*, 138 Fed.Appx. at 780-781.

Under Rule 14 of the Federal Rules of Criminal Procedure,

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

> (b) Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement.

"A defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense." *United States v. Rox,* supra, 692 F.2d at 454 (6th Cir. 1982), citing *United States v. Lane*, 584 F.2d 60, 64 (5th Cir. 1978).

> "In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (citing *United States v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995)). "The movant must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Hang Le-Thy Tran*, No. 04-1801,-F.3d-, 2006 WL 20545, *4 (6th Cir. Jan.5, 2006) (citing *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)).

*United States v. Day,* 2006 WL 120193 (W.D. Michigan January 17, 2006).

> When a defendant seeks a severance based on his desire to testify about fewer than all the charges, he must make "a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *United States v. Bowker,* 372 F.3d 365, 385 (6th Cir.2004), vacated on other grounds, --- U.S. ----, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005), (quoting *United States v. Martin,* 18 F.3d 1515, 1518-19 (10th Cir.1994)). Non-specific assertions of prejudice are insufficient to warrant severance under Rule 14. *Id.*

*Id.* Petitioner has failed to meet this standard here. His lack of memory regarding portions of the events does not rise to a convincing showing of the need to refrain from testifying regarding those events. *See id.* Further, as was noted by the United States Court of Appeals for the Sixth Circuit, the record likewise fails to indicate prejudice such that the severance of otherwise properly joined charges was required.

> "[A]bsent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *Tran,* 2006 WL 20545, *4 (quoting *United States v. Johnson,* 763 F.2d 773, 777 (6th Cir.1985)). "[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately." *United States v. Swift,* 809 F.2d 320, 323 (6th Cir.1987) (citing *United States v. Frazier,* 584 F.2d 790, 795 (6th Cir.1978)).

*United States v. Day, supra.* Therefore, petitioner has failed to establish the ineffective assistance of counsel for failure to request a severance of charges against him.[2]

---

[2] In *United States v. Yizar,* 956 F.2d 230, 232-33 (11th Cir. 1992), referred to by petitioner, defense counsel failed to interview witnesses and thereby did not learn that

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to properly argue the motion to suppress his statements to police based on an alleged violation of *Miranda v. Arizona,* 384 U.S. 436 (1966). *Petitio*n, at 16. Petitioner contends that his attorney should have allowed him to testify at the hearing on his motion to suppress that Agent Kochanowski and Sergeant Casuccio were lying when they testified he never requested an attorney after being advised of his *Miranda* rights. *Id*. According to petitioner, police never advised him of his rights under *Miranda*, and he asked for an attorney within a few minutes of being arrested. *Id*., at 18. Additionally, petitioner complains that his attorney failed to challenge admission of cocaine found in his gym bag based upon improper chain of custody because the cocaine allegedly had been found by Lt. Deakins inside of a green trash bag, which had "mysteriously disappeared" at the time of trial, and would have contained exculpatory evidence, i.e., no fingerprints of petitioner. *Id*., at 19.

Petitioner cannot establish prejudice under *Strickland* based on defense counsel's failure to call him as a witness at the hearing on his motion to suppress statements because

_____

testimony of an alleged co-conspirator, who did not testify under the Fifth Amendment at trial, could have testified that the defendant was innocent, had counsel moved for a severance of trials. The Court of Appeals in Yizar, remanded the case to the District Court for an evidentiary hearing to determine whether the witness would have been willing to testify at Yizar's trial if his Fifth Amendment rights had been safeguarded. *See id.* Such are not the circumstances here. *Williams v. Washington*, 59 F.3d 673, 682-83 (7th Cir. 1995), also referred to by petitioner, involves defense counsel's failure to move for what appeared to have been a successful motion for severance based on a co-defendant's confession that incriminated the defendant. Again, these circumstances are not present here.

petitioner made no incriminating statements to police at that time, and because the government did not introduce petitioner's statements to police at trial. *See Trial Transcript*, at 366-394; 1016-1047.

As to petitioner's contention that counsel denied him his right to testify at such hearing, *see Petitioner's Supplemental Reply*, Doc. No. 176, at 5,

> [t]he Supreme Court has not... decided that defendants have a constitutional right to testify at pre-trial suppression hearings. *See Gomez v. Duncan*, No. 02 Civ. 0846, 2004 WL 119360, at *33 (S.D.N.Y. Jan. 27, 2004). Several district courts have suggested that they do not. *See, e.g., Gomez*, 2004 WL 119360, at *33 & n. 42 (citing *Narvaez v. United States*, 97 Civ. 8745, 1998 WL 255429 at *5 n. 6 (S.D.N.Y. May 19, 1998)... *Hemingway*, 754 F.Supp. at 302[.]

*Parker v. Ercole*, 582 F.Supp.2d 273, 296-97 (N.D.N.Y. 2008). Even assuming it did, petitioner's claim fails.

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90, 104 S.Ct. 2052, 80 L.Ed.2d 674....

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel.

> *Joelson,* 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer,*1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may by inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson,* 7 F.3d at 177.

*United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000); *see also Alexander v. Smith*, 342 F.Supp.2d 677, 693 (E.D. Mich.2004)("Petitioner's assent in the decision not to testify is presumed because he gave no indication at trial that he wanted to testify"), citing *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000); *United States v. Campbell*, 86 Fed.Appx. 149, unpublished, 2004 WL 113501 (6th Cir.2004)(same).

Petitioner likewise cannot establish prejudice from counsel's failure to file a motion to suppress cocaine found in petitioner's gym bag based on the alleged improper chain of custody. Lt. Deakins testified that he found the cocaine in petitioner's gym bag inside of a black garbage bag. *Id.*, at 216-217. Officer Lawrence Bisuitti, who retrieved the evidence from Deakins and placed it in the police property room could not, however, recall a garbage bag. *Id.*, at 243-44, 248. Nothing in the record suggests any tampering of evidence that would have rendered the drugs inadmissible.

> Where no evidence exists to indicate that tampering with an exhibit occurred, the court presumes public officers have properly discharged their duties. *United States v. Allen*, 106 F.3d 695, 700 (6th Cir.), cert. denied, 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997). "Merely raising the possibility of tampering is not insufficient to render evidence inadmissible." *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir.1994).

*United States v. Black*, 239 Fed.Appx. 210, 2007 WL 2348210 (6th Cir. August 15, 2007).

> Indeed, physical evidence may be admitted even if there is a missing link in the chain of custody, "so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *Robinson*, 1996 WL 732297, at *2 (quotation omitted).

*United States v. Drake*, 280 Fed.Appx. 450, 455, 2008 WL 2224811 (6th Cir. May 29, 2008). Such were the circumstances here. Nothing in the record suggests that evidence had been altered. Further, even assuming a chain of custody issue had been raised, "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2532 n.1 (2009); *United States v. Black, supra* (same), citing *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990). Petitioner therefore has failed to establish the ineffective assistance of counsel on this basis.

In claim four, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed properly to challenge other acts evidence, *i.e.*, testimony by two witnesses who claimed to have engaged in drug deals with petitioner in the past. The United States Court of Appeals for the Sixth Circuit rejected petitioner's claim that the District Court erred in admitting such evidence as follows:

> Smith argues that the district court improperly admitted prejudicial "other acts" evidence, thereby depriving him of a fair trial. In an effort to prove that Smith had the specific intent to distribute the drugs that he was accused of possessing, the government offered testimony from two of Smith's associates who claimed to have engaged in drug deals with Smith in the past. The district court admitted this testimony pursuant to

Rule 404(b) of the Federal Rules of Evidence, which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, [or] knowledge...."

James Jeffrey Brown testified that he had sold Smith cocaine on two different occasions in quantities not normally purchased for individual use. Brown also testified that Smith had tried to sell him cocaine on several occasions, but, because Brown had his own supplier, he had never purchased cocaine from Smith. Smith admitted under cross examination that he had purchased cocaine from Brown in the past. Another acquaintance of Smith's, Jason Frank, testified that on two prior occasions he had purchased cocaine from Smith. Smith, however, denied having ever sold cocaine to Frank.

Smith argues that the district court erred in admitting the testimony of these two witnesses because it was extremely prejudicial to his case and because the government had other evidence that it could have relied upon to prove his alleged intent to distribute the drugs. He claims that the government's real motivation for admitting the evidence was to bolster its case by impermissibly suggesting that because Smith had previously possessed drugs, he was more likely to have possessed the drugs in the present case. Use of the testimony in this manner by the jury would be "other acts" evidence that is inadmissible under Rule 404(b) of the Federal Rules of Evidence.

Courts in this circuit employ a three-step analysis for determining the admissibility of "other acts" evidence under Rule 404(b). *See United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002). The first step requires the district court to decide whether there is sufficient evidence that the other act in question actually occurred. *Id*. at 720. If so, the court is then required to decide whether the evidence of the other act is "probative of a material issue other than character." *Id.*

(citation omitted). Finally, if the district court determines that the evidence is probative of a material issue other than character, the court is required to decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *Id.*

The district court in the present case made specific findings with respect to the last two steps, but not the first. We need not address this failure, however, because Smith has not argued on appeal that the drug transactions with the two witnesses did not actually occur. *See United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000) (holding that even where "the record does not reflect [that] the district court made the required factual finding [that] the other bad acts occurred," reversal was not required because the defendant "did not dispute this fact at trial, nor d[id] he do so on appeal").

The district court correctly concluded that the second step of the test was met because the testimony of the two witnesses-that Smith had bought and sold drugs in the past-was probative as to whether Smith intended to distribute the drugs that he was accused of possessing in the present case. *See United States v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998) ("Rule 404(b) evidence is admissible to prove intent if specific intent is a statutory element of the offense. Possession with intent to distribute is such an offense.") (citation omitted).

The third and final step in the test for the admission of Rule 404(b) evidence requires the district court to determine whether the evidence of the other acts is unduly prejudicial to the defendant. *Haywood*, 280 F.3d at 723. In making this determination, courts often consider the nature of the district court's limiting instruction, the temporal proximity of the other acts to the crime at issue, and the availability of other, less prejudicial evidence. *See, e.g., United States v. Feinman*, 930 F.2d 495, 499 (6th Cir.1991).

A defendant is less likely to prevail on his claim that evidence of other bad acts unfairly prejudiced him where the limiting

instruction given by a district court "correctly focused on intent." *See United States v. Myers*, 123 F.3d 350, 364 (6th Cir. 1997) (approving the admission of testimony regarding the defendant's prior drug transactions where the district court's limiting instruction stated that the evidence could be used only to prove intent to distribute). Following the testimony of both witnesses in the present case, the district court gave a limiting instruction that included the warning that the jury "may consider that evidence only for the purpose of deciding whether ... it proves the element of intent to distribute as alleged in the three counts of the indictment." This limiting instruction diminished the possibility that the jury would use the testimony to make impermissible inferences. *See Feinman*, 930 F.2d at 499 (holding that the admission of Rule 404(b) testimony regarding prior drug sales by the defendant was proper where "the district court minimized any possible prejudicial effect by giving a limiting instruction").

The district court's limiting instruction also directed the jury to consider only "the alleged prior acts occurring within two years of the dates of the indictment." Because the drug transactions testified to by Brown and Frank and considered by the jury "were all relatively close in time to the alleged crime so as to not prejudice [Smith] for something that happened in the distant past," the testimony was not unduly prejudicial. *Myers*, 123 F.3d at 363 (admitting the testimony of three witnesses who said that they had purchased drugs from the defendant three years prior to the alleged crime).

Smith maintains, however, that the government should have relied solely on the evidence that he possessed large quantities of drugs in order to prove his intent to distribute the cocaine. But the evidence of quantity alone may have been insufficient to support the jury's guilty verdict. This was not a case where police officers arrested Smith in the midst of a drug sale, or where a confidential informant provided inside information regarding Smith's intent to sell the cocaine. Because the Rule 404(b) evidence was one of the few ways for the government to connect the cocaine found in Smith's possession with his intent to distribute it, the district court's admission of this

evidence was not unduly prejudicial. *See United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value ... is the availability of other means of proof."). Because the testimony of the two witnesses was more probative than it was prejudicial, we conclude that the district court did not err in admitting this evidence pursuant to Rule 404(b).

*United States v. Smith, supra,* 138 Fed.Appx. at 785-86.

Petitioner, however, now asserts that he never sold drugs to James Brown or Jason Frank and states that he advised defense counsel that Frank was incarcerated during the time that he allegedly bought drugs from petitioner. Petitioner further contends that his attorney should have raised this issue on appeal. *Petition*, at 23. However, the Sixth Circuit noted, in its dismissal of this claim, that petitioner had denied selling drugs to Jason Frank.

Petitioner testified that he had previously been involved in trafficking in cocaine. *Trial Transcript*, at 1220-1221. He knew James Jeffrey Brown and Jason Frank. He had purchased cocaine from Jason Frank, but denied ever selling cocaine to Frank. *Id.*, at 1221. This Court is unable to locate in the record any indication that petitioner otherwise refuted the testimony of James Brown or Jason Frank regarding his prior dealings in cocaine. Further, the government provided defense counsel with a summary of Frank's prior criminal history, *see Exhibit B to Return of Writ*, which does not indicate that Frank was incarcerated the entire time between 1998 and 2000, the time period during which Frank said he bought and sold drugs with petitioner. In view of the foregoing, and due to petitioner's failure to further dispute the testimony of Brown and Frank when he testified

at trial, petitioner has failed to establish the ineffective assistance of counsel on this basis.

In claim five, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to investigate, interview and call defense witnesses and present evidence. Petitioner asserts that his attorney improperly failed to call Eugene Evans as a defense witness to testify that he heard that petitioner's nephew, Nathan Smith, lost the bag containing kilograms of cocaine. The record, however, fails to support petitioner's claim that testimony by Evans would have exonerated petitioner.[3]

Petitioner asserts that his attorney improperly failed to interview his nephew or call as a defense witness Dashawn Smith who would have testified that crack cocaine had been left in petitioner's car by Derek Peoples, a.k.a. "D-BO," and had been in the hands of the black male responsible for shooting petitioner. *Petition,* at 29. In support of this claim, petitioner has attached an affidavit from Dashawn Smith which he previously submitted in support of his motion for a new trial, *see* Doc. No. 78, in which Smith indicates that he was with petitioner on the day that petitioner was shot, and that they were in the process of selling marijuana to "Twin." *Affidavit of Dashawn Smith, see* Doc. No. 78.

> Approximately 2-3 minutes after Twin exited the car ... 2 black males appeared at my side of the car, one of them pointing a gun at me and holding a shoe box in his other hand. At their direction, I got out of the car and began to move away.

---

[3] Evans told police that he had purchased marijuana and quarter kilogram quantities of cocaine from petitioner over ten times from several years past to approximately one year ago. He had heard that petitioner's nephew lost a bag containing kilograms of cocaine and that petitioner had been shot during a drug deal gone bad. *See Exhibits to Response in Opposition to Motion for a New Trial,* Doc. No. 81.

However, I could hear these 2 males telling the Defendant to take off his jewelry, and to get out of the car because they intended to hijack it. At that point one of the males shot the Defendant and he somehow managed to escape by driving away.

I can personally attest to the fact that Twin is responsible for the dope found in the Defendant's car after he was shot, and that the 2 males that attempted to hijack the Defendant's care are part of a gang that Twin also belongs to. Further, that the only reason the crack and the show box were left in the car was due to the Defendant's unexpected escape.

*See id.* However, on July 26, 2001, the night of the shooting, Smith provided videotaped statements to police, and on March 7, 2003, he testified before the grand jury. The contents of Smith's prior statements were made known to defense prior to trial and appeared to conflict with his prior grand jury testimony. *See* Doc. No. 44; *Exhibits to Response of the United States to Defendant's Motion for a New Trial,* Doc. No. 81; *Order*, June 13, 2005, Doc. No. 90. Moreover, at the hearing on petitioner's motion for a new trial, Smith invoked his 5th Amendment right against self incrimination. His entire testimony therefore was stricken from the record. *See* Doc. No. 90. For this reason, Smith's affidavit, referred to by petitioner, fails to support petitioner's claim of ineffective assistance of counsel. Additionally, petitioner acknowledges that Smith's affidavit is inconsistent with his own version of the events at issue. Petitioner has failed to establish prejudice from counsel's decision not to call Dashawn Smith as a defense witness.

Petitioner contends that his attorney performed in a constitutionally ineffective manner by failing to interview or call as a defense witness the wife of Donald Davis, who

would have testified that Detective Taylor and Agent Bogner were lying.

Officer Pettingill interviewed Davis at the scene of the accident. *Trial Transcript*, at 645.

> Q. When did you talk to Mr. Davis?
>
> A. Almost immediately upon arriving. He was out in the backyard and I asked him where the person went.
>
> Q. When you talked to Mr. Davis, did he provide you any information about anything that the victim from the car may have had with him?
>
> A. Yes.
>
> Q. What did he tell you?
>
> A. He told me he had a box that he was carrying.
>
> ***
>
> Q. And so he told you that immediately upon your arrival?
>
> A. Yes.

*Id.*, at 645-646. Officer Brown also testified that Davis

> stated that he observed a male black get into the car, get the shoe box, and proceed down the alley southbound.
>
> Q. He specifically told you he saw the individual carrying the

shoe box?

A.  Yes.

***

He stated he believed it was the person – the driver of the car
that wrecked.

*Id.*, at 681-682.  Davis later told Detective Taylor and Agent Bogner that he did not recall

seeing a shoe box and believed police were mixed up regarding this portion of his

statement.  *See Exhibit C to Return of Writ, Zanesville Police Department, Supplementary*

*Report*[4].  Davis denied at trial telling police that he saw a shoe box, and said he believed

---

[4] The supplementary police report indicates that police again interviewed Davis
on February 19,2003, and at that time, Davis stated in relevant part:

> Davis stated that on the day of the shooting, he had just arrived home and
> was entering the back door of his residence when he saw a vehicle crash
> into the fence at the rear of his residence.  Davis... then went over to the
> vehicle.  Davis stated that the driver was attempting to exit the vehicle at
> this time.... [T]he driver then stated that he needed to "get out of there"....
> Davis... last saw the driver walking in the alley away from the scene....
> Davis stated that he did not see the driver in possession of anything
> during the time he was able to observe him.

> I advised Davis that I was aware that he had previously made a statement
> to a CPD Patrol Officer and a CPD Detective reference this incident.  I
> advised Davis that a discrepancy existed between these two statements.
> The discrepancy concerned whether or not he had observed the driver in
> possession of a shoebox.  Davis stated that on the night of the incident he
> had spoken to a while patrol officer and a black patrol officer.... Davis...
> believed that the patrol officer taking his statement may have gotten the
> information from the other patrol officer mixed with his statement.  Davis
> stated that he did observe the driver in possession of a shoebox.

"they got mixed up." *Trial Transcript*, at 616-617. He made clear that he did not see the driver of the car carrying anything in his arms. *Id.*, at 617. Further, nothing in the record supports petitioner's allegation that Davis' wife would have provided further exculpatory testimony on this point.

Petitioner asserts that his attorney improperly failed to advise him of his right to decide whether to testify on his own behalf. According to petitioner, his attorney decided, "without consultation or consent" that petitioner would testify on his own behalf. *Petition*, at 34. Petitioner now states he did not want to testify on Counts Three and Four due to his lack of memory regarding those events; he did not know he would be cross examined on his prior convictions if he testified at trial; and he did not know that, if he was found guilty, the Court could increase his sentence based on his trial testimony for obstruction of justice. *Petition*, at 35. In a similar vein, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to discuss with him the risks of proceeding to trial as opposed to entering a guilty plea. *Petition*, at 65-70. Petitioner alleges that he told his attorney he wanted to plead guilty, but his attorney refused to allow him to plead guilty, and failed even to convey the government's plea offer. *See id.*

In support of this claim, petitioner has submitted an affidavit from Roger Burke, in which Burke indicates that he was present at a September 2003, meeting between petitioner and defense counsel, Attorney William Fleck. When asked by Burke why he had not

*Id.*

worked out any plea agreement, .

> Mr. Fleck responded: "The government hasn't offered a plea
> agreement and I haven't asked for one."

> ... Ivan asked Mr. Fleck to contact the government and request
> a meeting to discuss a possible plea agreement, since all of the
> other defendants in this case had received plea agreements.
> Ivan also stated to Mr. Fleck: "Besides, you have never told me
> that you could win this case at trial."  In response, Mr. Fleck
> stated: "There is no need to ask for a plea agreement if you
> don't have anything to tell them.  They won't talk to you."
> Finally, Mr. Fleck told Ivan: "Whether you go to trial or take a
> plea, your sentence will be around ten (10) years, so I think it's
> best if we take our chances at trial."

*Affidavit of Roger Burke, Exhibit 7 to Petition*.  Petitioner also has attached an affidavit from

his wife, Dawna Smith, in which Smith indicates that she was present at that same meeting,

and that petitioner asked his lawyer to set up a meeting with the government so they could

negotiate a plea agreement.  *See Affidavit of Dawna Smith, Exhibit 8 to Petition*.  However,

> Mr. Fleck was unwilling to set up a meeting, and advised Ivan
> to go to trial because his sentence would be "around ten (10)
> years" regardless of whether he went to trial or pled guilty.

> On September 5, 2003, I went to Mr. Fleck's office to drop off
> a payment for his services.  Mr. Fleck informed me that a plea
> agreement had been sent to his office by the government.  Mr.
> Fleck then instructed me to inform Ivan and have him contact
> Mr. Fleck immediately, because the plea agreement had to be
> accepted by 3:00 P.M. that same day.... I ... relayed Mr. Fleck's
> information and instructions to Ivan. I was... present when
> Ivan attempted unsuccessfully three (3) times to contact Mr.
> Fleck by phone to discuss this plea agreement.

> On September 8, 2003, Mr. Jim core and myself were present when Ivan decided he didn't want to go to trial, but wanted to plead guilty regardless of whether the plea agreement was still available or not.

*See id.* Smith further indicates that petitioner unsuccessfully attempted to contact his attorney over the telephone, and immediately prior to trial told his attorney

> that he did not want to go to trial and definitely did not want to testify. In response, Mr. Fleck stated: "We've crossed that river and can't turn back. You didn't take the plea last week and now it's too late. The only chance we have to win this case is for you to get on that stand and testify."

> Following Mr. Fleck's statements, Ivan told Mr. Fleck that he wanted to talk to the prosecutor personally to see if a plea agreement could be worked out. In response, Mr. Fleck stated: "It won't do any good. It's too late in the game. We have to go to trial, so get ready. The Judge and prosecutor are ready." At that point, Mr. Fleck walked away.

*See id.* Finally, petitioner has submitted an affidavit from Lindsay Smith, in which she indicates that she also was present at that same meeting, at which time Attorney Fleck stated he opposed any plea agreement because petitioner would receive the same sentence regardless of whether he proceeded to trial or pleaded guilty, and he had not asked for a plea agreement because the government would not offer one unless petitioner had information to offer them. *See id.*

> When Ivan and Mr. Burke pressed Mr. Fleck about Ivan's chances of winning at trial, all Fleck said was, "Ivan will have to testify."

*See id.*

This claim likewise lacks merit.

> Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58, 106 S.Ct. 366. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer,* 263 F.3d 542, 547- 48 (6th Cir.2001) (citing *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

*Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005). However, an attorney's failure to insist that his client accept the government's plea offer in view of overwhelming evidence of guilt does not constitute constitutionally ineffective assistance. *Smith v. United States, supra*, 348 F.3d at 552.

> The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.* The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Id.*, at 553, citing *United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992).

Although Attorney Fleck is now deceased, and unable to respond to petitioner's allegations, *see Return of Writ,* at 68, petitioner "has the burden of persuading the Court by a preponderance of the evidence that his version of the disputed events is more likely true." *Ashley v. United States*, 17 Fed.Appx. 306, unpublished, 2001 WL 966493 *3 (6th Cir. August 16, 2001), citing *Lema v. United States,* 987 F.2d 48, 51 (1st Cir. 1993).

> Federal court review presumes that an attorney "is competent, and therefore, 'the burden rests on the accused to demonstrate a constitutional violation.'"

*Jones v. United States*, 2007 WL 2852339 (E.D. Michigan September 28, 2007), citing *United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995)(quoting *United States v. Cronic*, 446 U.S. 648, 658 (1984)). The record fails to support petitioner's contention that he was willing to entertain a guilty plea.

Prior to the start of trial, and in the presence of petitioner, the prosecutor and Attorney Fleck stated that petitioner was not interested in a guilty plea:

> MS. HAHNERT: ... Your Honor, I wanted to put on the record that a plea offer had been made to Mr. Smith, simply, so that it is clear what that offer was, so that if there is any question down the road, we won't be in some debate of what it might have been.
>
> Basically, it would have been to plead guilty to – at least at this point – it would have been to all three counts. The relevant conduct would have been an offense level 32 under the sentencing guidelines, as well as an acceptance of responsibility deduction of two levels and the potential for a 5K motion for downward departure for cooperation, if Mr. Smith choose to do so.
>
> That has pretty much been the offer from the beginning and that was discussed in detail last week. But I just wanted to put that on the record, so that if Mr. Smith had any questions about that, it could be raised now before the trial began.
>
> COURT: Thank you. Mr. Fleck, is that your understanding of the plea offer?
>
> MR. FLECK: Yes, Your Honor.
>
> COURT: And was that plea offer discussed with your client?
>
> MR. FLECK: Yes, Your Honor.
>
> COURT: And what is his position with regard to the plea offer?
>
> MR. FLECK: He wishes to go to trial.

COURT: All right.  He declines to accept the plea offer; is that correct?

MR. FLECK: Yes, Your Honor.

COURT: Okay.  Thank you.

*Trial Transcript*, at 3-4.  Petitioner made no indication that he wanted to plead guilty.  *See id.*  Therefore, his allegation now that defense counsel prevented him from doing so is belied by the record.

As to petitioner's claim that his attorney failed to advise him regarding testifying on his own behalf, defense counsel has a duty to advise a criminal defendant whether or not he should take the stand[.]"  *United States v. Weber*,  208 F.3d at 551; *see also Flood v. Phillips*, 90 Fed.Appx. 108, unpublished, 2004 WL 193164 *9 (6th Cir. January 30, 2004)("[T]he Sixth Amendment requires defense counsel to provide a criminal defendant with adequate advice and consultation about his... Fifth Amendment right to testify."  However, nothing in the record supports petitioner's claim that he did not want to testify or did not know that the jury would learn about his prior record.  To the contrary, as noted by the respondent, petitioner's defense was predicated on his version of the events at issue, which required his testimony.  Further, the decision of which witnesses to call and what evidence to present generally is reserved for counsel's discretion and judgment. *See, e.g., United States v. Foreman*, 323 F.3d 498, 504 (6th Cir.2003). Regarding the deference that a reviewing court owes to counsel's discretion and judgment, the Supreme Court has instructed that

"[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. Additionally, petitioner acknowledged at the outset of his direct examination that he had been convicted in 1992 of attempted trafficking of cocaine, and had served two years in the penitentiary. *Trial Transcript*, at 1167. He admitted that he had sold "personal use" quantities of marijuana, but denied selling any cocaine, at least since he had been released from prison. *Id*., at 1169. In view of the foregoing, the Court concludes that petitioner has failed to establish that, but for the inadequate performance of counsel, he would not have testified on his own behalf.

Petitioner asserts that he was denied the effective assistance of counsel due to his attorney's failure to object to various instances of prosecutorial misconduct. *Petition*, at 35-44. Petitioner complains that the prosecutor improperly argued that he had lost his gym bag containing drugs. According to petitioner, because Creola Puryear testified that she was told her sons lost petitioner's bag,[5] and in view of Eugene Evans statement to police,

---

[5] Puryear testified in relevant part:

[O]ne time [petitioner] took the kids to the gym and came home and was mad at them because they had lost his gym bag.

***

[B]ecause he... told them to take the bag and go get in the car, by the time they went to get in the car, they had ... left the bag and he was mad because his uniforms was gone.

*Trial Transcript*, at 505.

this was a knowingly false misrepresentation by the government. Petitioner also again contends that the government knowingly presented false testimony by Jason Franks, because Franks was incarcerated at the time Franks claimed to have purchased cocaine from petitioner. He complains that police failed to investigate the identity of the shooter or pursue charges against his accomplice, based on information given by Tonya Holiday. He complains that the prosecutor misrepresented Holiday's statement to Detective Taylor. And that the government threatened Teron Johnson so that Johnson invoked the Fifth Amendment refused to testify on petitioner's behalf. Finally, petitioner complains that the prosecutor permitted police to falsely testify that Davis said he had seen petitioner carrying a shoe box, and they found a blood trail leading from petitioner's car to the dumpster where the shoe box containing drugs was found.

All of the foregoing claims are without merit. To the extent that petitioner's claim of prosecutorial misconduct relies on matters readily apparent from the face of the record, he has failed to establish cause and actual prejudice for his failure to raise the issue(s) on direct appeal. *See Napier v. United States*, 159 F.3d 956, 961 (6th Cir.1998), citing *United States v. Fray*, 456 U.S. 152 (1982). He has failed to meet this standard here.

Further, the scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnell v. DeChristoforo*, 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness.

*Id.*, at 642-43; *Martin v. Foltz*, 773 F.2d 711, 716-17 (6th Cir.1985); *Angel v. Overberg*, 682 F.2dd

605, 607 (6th Cir.1982) ( *en banc* ).

> The Sixth Circuit has adopted a two-step approach for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir.2002) (citing *United States v. Carter,* 236 F.3d 777, 783 (6th Cir.2001)); *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir.2000). First, the Court must consider whether the prosecutor's conduct and remarks were improper. *See Macias,* 291 F.3d at 452 (citing same). Second, if the Court concludes that the remarks were improper, then the Court must apply the four-factor test set forth by the Sixth Circuit in *United States v. Carroll,* 26 F.3d 1380, 1385 (6th Cir.1994), to determine "whether the impropriety was flagrant" and thus violated the defendant's due process rights. *Macias,* 291 F.3d at 452 (quoting *Carter,* 236 F.3d at 783). The four factors are: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. *See Macias,* 291 F.3d at 452 (quoting *Carter,* 236 F.3d at 783).

*Anderson v. United States,* 246 F.Supp.2d 758, 760-61 (E.D. Michigan 2003). Petitioner has

failed to meet this standard here. His allegations of prosecutorial misconduct are entirely

without support.

A prosecutor is permitted to argue reasonable inferences of the evidence. *Macias v.*

*Makowski*, 291 F.3d 447, 453 (6th Cir. 2002), citing *Byrd v. Collins*, 209 F.3d 486, 453 (6th Cir.

2000). Such were the circumstances here. Further, nothing in the record supports

petitioner's allegation that police lied regarding Davis' statements or the blood trail.

Likewise, nothing supports petitioner's contention that the government improperly

threatened Johnson so that he would exercise his Fifth Amendment privilege. *See Trial Transcript*, at 1049-1066; 1164-1166.[6] The record likewise does not support petitioner's allegation that Franks was incarcerated at the time he said he bought drugs from petitioner. *See Exhibits to Return of Writ.* Finally, although Holiday identified a person as the shooter, *Transcript*, at 855, after showing the suspect to DeShawn Smith, petitioner's nephew and a witness to the shooting, he was released. *Id.*, at 881. Holiday had identified the shooter by his clothing. *Id.*, at 884. At the time of trial, that investigation was still open. *Id.*, at 885. In any event, as noted by respondent, petitioner cannot establish that he was that prejudiced by any failure of the government to identify and prosecute his shooter.

Holiday additionally testified that she had not seen the petitioner's car in the area earlier that day, and denied telling Detective Taylor on February 12, 2003, that she had seen his car earlier that day. *Trial Transcript*, at 842-843. Detective Taylor, after reviewing a memo he had prepared after interviewing Holiday, testified that she told him she had seen two persons inside of the vehicle and that she had previously seen them in that same area. *Id.*, at 198-1099. The foregoing neither demonstrates that the prosecutor acted improperly or that petitioner was prejudiced thereby such that habeas relief is warranted.

Petitioner argues at length that the District Court improperly denied his motion for

---

[6] The Court reviewed a summary of Johnson's testimony that was provided by defense counsel, and thereupon advised Johnson of his Fifth Amendment right and his right to consult with counsel prior to testifying. Johnson requested to speak to an attorney. *Trial Transcript*, at 1049-1058. The Court appointed Steve Nolder from the Public Defender's Office to advise Johnson. *Id.*, at 1064. Thereafter, Johnson invoked the Fifth Amendment. *Id.*, at 1164-1166.

a new trial and that he is actually innocent of the charges in view of the evidence presented in his motion for a new trial. However, the Court has already rejected the arguments made by petitioner, *Order,* June 13, 2005, Doc. No. 90, and will not now again address these arguments here.

Petitioner alleges that he requested his attorney, Kerry Donahue, to file an appeal of his motion for a new trial, but that counsel failed to do so. *Petition,* at 54. Petitioner states that he told Attorney Donahue both prior to and at the conclusion of the hearing on his Rule 33 motion, that if the Court denied his motion, he wanted to file an appeal. *Id.* On June 16, 2005, he received a copy of the Court's order denying his motion for a new trial, along with a note from counsel instructing him to call if he had any questions. *Id.*

> Mr. Smith telephoned Mr. Donahue's office that same day, but was unable to talk to Mr. Donahue. However, Mr. Smith did talk to Mr. Donahue's secretary and asked her to remind Mr. Donahue to file an appeal of the denial of his Rule 33 motion. Mr. Donahue's secretary assured Mr. Smith that she would relay the information to Mr. Donahue because she was aware that the notice of appeal had to be filed within ten (10) days of the Court's decision. However, Mr. Donahue never filed the requested notice of appeal and, in fact, has never contacted Mr. Smith since.

*Id.*

In response to petitioner's allegation, respondent has submitted an affidavit from Attorney Kerry Donahue, which indicates in relevant part as follows:

> I was not trial counsel.

> I completely and to the best of my ability did represent Mr.

Smith's interests at that sentencing hearing.

Following that hearing I duly filed a notice of Appeal and did represent Mr. Smith for the duration of that appeal.

While that appeal was pending Ivan Smith did file a pro se motion for new trial.

On April 27, 2005, the Court appointed me to represent Mr. Smith at the hearing on the motion for new trial.

I did competently and to the best of my ability represent him for that hearing.

I do not have a specific recollection of whether Mr. Smith did or did not ask me to file an appeal of the denial of that motion following the hearing.

As a general practice if a client asked me to file something, particularly an appeal, I would always be sure to do so. I would not willfully and/or knowingly fail to file such a notice.

That said, while I do not recall the request and while I did not file an appeal of that decision, I am human, so it is possible that the request was made and that I somehow made a mistake and forgot or unintentionally did not follow through with such request.

All I can say is that I have no recollection of the event either way so I cannot definitely say whether he did or did not ask me to file an appeal of the Court's decision on the motion for a new trial.

***

The Court granted my request to withdraw on September 14, 2005 and new counsel was appointed to handle the re-

sentencing.

*Affidavit of Kerry M. Donahue, see Supplemental Response of United States*, Doc. No. 171.

Additionally, the transcript of the hearing on petitioner's motion for a new trial indicates:

> [Defense counsel]: Your Honor, I think that if the Court denies our motion for a new trial.... I think that Ivan has told me that he wanted to request alternate counsel to do any appeal of this case. If this motion is denied. Just so he has separate counsel appealing this portion in this case.

> COURT: I understand. Thank you.

*Transcript of Hearing on Motion for a New Trial*, May 31, 2005, at 108.

The failure of an attorney to file a timely appeal upon the defendant's request constitutes ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir.1994); *United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993); *United States v. Horodner,* 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States,* 961 F.2d 17, 23 (1st Cir.1992); *United States v. Davis,* 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart,* 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment.

*Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir.1998).

> [A] lawyer who disregards specific instructions from the
> defendant to file a notice of appeal acts in a manner that is
> professionally unreasonable. *See Rodriquez v. United States,* 395
> U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *cf. Peguero v.
> United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18
> (1999) ("[W]hen counsel fails to file a requested appeal, a
> defendant is entitled to [a new] appeal without showing that
> his appeal would likely have had merit"). This is so because a
> defendant who instructs counsel to initiate an appeal
> reasonably relies upon counsel to file the necessary notice.
> Counsel's failure to do so cannot be considered a strategic
> decision; filing a notice of appeal is a purely ministerial task,
> and the failure to file reflects inattention to the defendant's
> wishes.

*Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000). However, upon review of the record,

petitioner's allegation that he requested Attorney Donahue to file the appeal is not credible

such that an evidentiary hearing on this issue is warranted.

According to petitioner, on June 16, 2005, he received a copy of the Court's June 13,

2005, Order denying his motion for a new trial. He called Attorney Donahue that same day

to ask him to file the appeal. He knew that there was a ten day time limit for filing the

notice of appeal. He never spoke to Donahue again.

The record reflects that, on July 14, 2005, the United States Court of Appeals for the

Sixth Circuit affirmed petitioner's conviction, and remanded the case to the District Court

for re-sentencing. Doc. Nos. 92, 93. Attorney Donahue represented petitioner in that

appeal. On August 23, 2005, petitioner filed a "Motion for Reappointment of Counsel."

Doc. No. 96. In support of this motion, petitioner stated, *inter alia*:

> June 16th 2005. Smith receives the decision (R.33) from

> Donahue. [E]nclosed is a letter, stating call if you have any
> question. Counsel doesn't communicate with his client, to
> instruct him on how to proceed. Smith contacts the Federal
> Public Defender['s] Office searching for advice. Speaks to a
> counselor, who informs him that you only have 10 days to file
> a timely appeal notice on a R.33 decision.... and as of June 25th
> 2005 time has expired to appeal that decision.

*Motion for Reappointment of Counsel*, Doc. No. 96.[7] He did not allege at that time, that he

requested Attorney Donahue to file the appeal, nor did Attorney Donahue so indicate in

his subsequent September 13, 2005, request to withdraw from his representation of

petitioner:

> Despite Counsels hard work and vigorous pursuit of the
> Defendants rights, counsel and Defendant have had numerous
> disagreements and differences. This has made further
> representation of the Defendant difficult if not impossible, to
> wit Defendant has made unwarranted accusations regarding
> counsels' representation of him.

*Motion to Appoint New Counsel*, Doc. No. 98. Further, although the Court appointed

petitioner new counsel on September 20, 2005, shortly thereafter, to represent him at his re-

sentencing hearing, *see* Doc. Nos. 100, 101, and again on December 7, 2005, to represent him

on appeal, see Doc. Nos. 113, 116, petitioner did not raise any complaint that he had lost

his right to appeal the denial of his motion for a new trial due to the ineffective assistance

of Attorney Donahue until November 15, 2006, when he filed the instant §2255 motion.

---

[7] On September 22, 2005, petitioner filed a similar motion, in which he did not
indicate that he had asked Attorney Donahue to file an appeal of his Rule 33 motion.
See Doc. No. 103.

Further, on November 3, 2005, neither petitioner nor his attorney made any mention of petitioner's complaint regarding Donahue's failure to file such appeal, despite referring to the Rule 33 motion at sentencing, and despite petitioner being given the opportunity to address the Court:

> MS. BURKETT: I'm somewhat at a disadvantage because I, obviously, was not Mr. Smith's trial appellate or Rule 33 counsel. But it certainly is my understanding that the information that he would have presented in a Rule 33 hearing would be new information as any other information that was available at the time of trial would have been pursued through the direct appeal or other post-conviction relief. So, the fact that he provided affidavits for information that he learned about after the trial was over would seem appropriate in that hearing.
>
> ***
>
> COURT: Mr. Smith, is there anything you wish to say before the Court proceeds with resentencing?
>
> DEFENDANT: No, Your Honor. I'm going to let Ms. Burkett's comments stand.

*Sentencing Transcript,* November 3, 2005, at 12-13. Further, although Attorney Donahue indicates that he now can no longer recall whether or not petitioner requested him to file an appeal, the transcript of the hearing on petitioner's motion for a new trial does not support petitioner's allegation here. To the contrary, the transcript of that hearing reflects that petitioner told his attorney he would be seeking new counsel to file such an appeal. *See Transcript of Hearing on Motion for a New Trial*, May 31, 2005, at 108. Petitioner has filed

*pro se* pleadings in the past and was aware of the ten-day time limit for filing the appeal. *See, supra*. Under these circumstances, this Court concludes that petitioner's allegation now that he requested Attorney Donahue to file the appeal, and that counsel improperly failed to do so, is simply not worthy of credit, and that the record fails to reflect that an evidentiary hearing on this issue is warranted.

Petitioner makes a similar allegation regarding Attorney Birkett's failure to file an appeal of his November 3, 2005, re-sentencing. *Petition*, at 64. However, this claim likewise fails, as that sentence was vacated on appeal and, as previously discussed, the District Court subsequently re-sentenced petitioner for a third time. *See* Doc. No. 130, 131, 137, 148.

Finally, petitioner asserts that he was denied the effective assistance of counsel because his attorneys failed to argue at his September 19, 2007, re-sentencing hearing or on appeal that use of facts not admitted by petitioner nor established beyond a reasonable doubt, to establish his recommended guideline sentence under the advisory United States Sentencing Guidelines violated *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 621 (2005). However, as noted by respondent, the United States Court of Appeals for the Sixth Circuit has rejected this argument. *See United States v. Gates*, 461 F.3d 703 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006). Therefore, petitioner has failed to establish the ineffective assistance of counsel under *Strickland v. Washington, supra*, 466 U.S. at 668, on this basis.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge